UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GYPSY DESKINS,<br><br>**Plaintiff,**<br><br>v.<br><br>KILOLO KIJAKAZI,<br>*Acting Commissioner of Social Security,*<br><br>**Defendant.** | No. 22-cv-1114-ZMF |

**MEMORANDUM OPINION**

Plaintiff Gypsy Deskins ("Mr. Deskins") moves for reversal of Defendant Commissioner of the Social Security Administration's ("SSA" or "Commissioner") decision adopting the findings of an Administrative Law Judge ("ALJ") and denying Mr. Deskins's application for Supplemental Security Income and Disability Insurance Benefits. *See* Pl.'s Mot. J. Reversal, ECF No. 19. Defendant moves for affirmance. *See* Def.'s Mot. J. Affirmance ("Def.'s Mot."), ECF No. 20. After considering the parties' submissions and the Administrative Record,[1] the Court DENIES Mr. Deskins's Motion for Judgment of Reversal and GRANTS the SSA's Motion for Judgment of Affirmance.

---

[1] The Administrative Record consists of forty-nine exhibits. *See* Administrative R., ECF No. 12. For ease of reference citations to the Administrative Record will refer to the "AR" and cite to the consecutive page numbers provided in the lower right-hand corner of each page.

1

**I.      BACKGROUND**

      A.      <u>Statutory Framework</u>

The Social Security Act (the "Act") provides benefits for "disabled" individuals. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The impairment must be severe and must render the individual unable to perform both "previous work" and "any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B); *see* 20 C.F.R. § 416.905(a).

The SSA uses a five-step sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a)(4). If a determination can be made at any step, the SSA does not go on to the next step. *See id.* The burden of proof is borne by the claimant at each of the first four steps and switches to the Commissioner at step five. *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (citing 20 C.F.R. §§ 404.1520, 416.920). At step one, the claimant must demonstrate he is not presently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). At step two, the claimant must show that he has a "severe medically determinable" impairment that "significantly limits his physical or mental ability to do basic work activities." *Id.* §§ 416.920(a)(4)(ii), (c). At step three, the claimant must show that his impairment—or combination of impairments— "meets or equals" the criteria of an impairment listed in the Commissioner's regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment does not meet or equal a listed impairment, the Commissioner proceeds to step four, which requires the Commissioner to determine the claimant's residual functional capacity ("RFC") and whether, considering the RFC, the claimant can still perform any relevant past work. *See id.*

§§ 416.920(a)(4)(iv), 416.920(e)–(f). If the RFC indicates that the claimant cannot engage in past work, then at step five, the ALJ looks to the claimant's RFC, age, education, and work experience to determine if he can perform "other work" in the national economy. *Id.* §§ 416.920(a)(4)(v); *see id.* § 416.920(g).

### B. Factual Background

Mr. Deskins is an adult male with a tenth-grade education. *See* AR 152. He previously worked as a security guard and last served as a laborer in 2016. *See* AR 366. Mr. Deskins's alleged disability began on August 1, 2019, at which time he alleged an inability to work due to "schizophrenia, bipolar, anxiety, and pain related to arthritis." AR 166. During the ALJ hearing, Mr. Deskins expanded on his limitations, testifying that he also suffered from intense physical pain; psychiatric issues such as post-traumatic stress disorder ("PTSD"), depression, obsessive-compulsive disorder ("OCD"), and potential psychosis or schizophrenia; complications due to gunshot and stab wounds, and the removal of some organs; tachycardia; and a lack of education and mental impairments. *See* AR 76, 95–97. He further testified that his impairments, especially his hip injury, prevented him from completing daily activities, such as cooking, cleaning, transportation, self-care, and working. *See* AR 112–113, 338.

Mr. Deskins has a history of substance use, including "cocaine, PCP, MDMA, and alcohol." AR 95–97, 116–118, 405, 583. His marijuana use reportedly began around age twelve, his alcohol use around age fourteen, and other illicit drug use in his twenties. *See* AR 405, 545, 583. Mr. Deskins has been hospitalized while using illicit substances, and his substance use has coincided with his other impairments. *See* AR 744, 929. Medical evidence demonstrates that Mr. Deskins may have used substances to "cope with [his] physical pain and mental health symptoms."

3

AR 572. Mr. Deskins testified that despite "ups and downs" with his substance use, he has maintained sobriety for some time. *See* AR 116–118.

Many experts have evaluated Mr. Deskins. *See* AR 136–152, 389–715. On October 25, 2018, Wanda Caesar, NP, diagnosed Mr. Deskins with bipolar disorder, anxiety disorder, and OCD. *See* AR 406. She continued to evaluate Mr. Deskins throughout 2019, at which point she opined that she needed to continue to observe Mr. Deskins for possible "schizoaffective disorder . . . [and possible] schizotypal features." AR 406; *see* AR 405. Dr. Allison Drewno, PsyD, conducted a psychiatric evaluation on March 12, 2020, and diagnosed Mr. Deskins with an unspecified anxiety disorder, PTSD, and alcohol abuse disorder. *See* AR 548. She found her evaluation to be "consistent with psychiatric and substance abuse problems" but noted that Mr. Deskins's symptoms did not "appear to be significant enough to interfere with [his] ability to function on a daily basis." AR 548. Dr. Elizabeth Nolte, MD, conducted a consultative internal medical exam of Mr. Deskins. *See* AR 526–530. She found that Mr. Deskins had "moderate limitation[s] in walking, climbing, and squatting" and that he should avoid "prolonged standing[,]" "walking, climbing, sitting" and other physical activities due to his physical impairments. AR 529.

Agency medical and psychological consultants also evaluated Mr. Deskins by reviewing his medical records. *See* AR 76–78, 136–52. Dr. Bedeau, MD, and Dr. Venkataraman, MD, found that despite Mr. Deskins's impairments, he was able to perform light work. *See* AR 141, 145. Dr. Bedeau found that Mr. Deskins had "severe" musculoskeletal system impairments; "non-severe" mental impairments; and mild limitations in his ability to understand, remember and apply information, and concentrate, persist, or maintain pace. AR 148. Dr. Gemma Nachbahr, Ph.D., found that Mr. Deskins's had mild limitations in "applying complex instructions, using reason and judgment [to] make work-related decisions; interacting adequately with supervisors, co-workers

4

and the public." AR 140. Dr. Nachbahr noted that Mr. Deskins had "moderately limited" or "[n]ot significantly limited" understanding and memory limitations and similar limitations in sustaining concentration and persistence. AR 142. Significantly, Dr. Nachbahr opined that Mr. Deskins could "maintain attention and concentration as needed to perform simple tasks." AR 142.

    C.    <u>Procedural History</u>

On August 5, 2019, Mr. Deskins applied for disability benefits. *See* AR 280–91. On March 25, 2020, the SSA denied his claim. *See* AR 155. Mr. Deskins timely requested a hearing before an ALJ, which was held on March 23, 2021. *See* AR 131–35, 270.

On June 30, 2021, the ALJ denied the claim. *See* AR 51–82. At step one, the ALJ determined that Mr. Deskins had "not engaged in substantial gainful activity since the alleged onset date." AR 57. At step two, the ALJ determined that Mr. Deskins had the following severe impairments: "[o]steoarthritis and degenerative joint disease of the right hip, residual complications from stab wounds and gunshot wounds, varicosities, tachycardia, affective disorder, anxiety - related, and trauma - related disorders[.]" AR 57. At step three, the ALJ determined that even when considering his substance use, Mr. Deskins "did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1[.]" AR 57.

At step four, the ALJ conducted two RFC assessments: one accounting for Mr. Deskins's substance use ("Substance Use RFC"), *see* AR 62, and one not ("Non-Substance Use RFC"), *see* AR 76. For the Substance Use RFC, the ALJ determined that Mr. Deskins could perform light work with limitations. *See* AR 62. Specifically, the ALJ limited Mr. Deskins to standing and/or walking for a maximum of four hours in an eight-hour workday; occasional physical activity such as climbing stairs, ramps, kneeling, crouching, crawling, and stopping; and occasional exposure to

moving machinery, respiratory irritants, and poor ventilation. *See* AR 62. Mr. Deskins could not participate in strenuous physical activities such as climbing ropes, ladders, or scaffolds. *See* AR 62. The ALJ also limited Mr. Deskins to "simple, routine tasks . . . not at a production pace . . . [with] only occasional[] interact[ion] with supervisors, co-workers, and the public" and "applying commonsense understanding to carry out uninvolved written or oral instruction, dealing with problems involving a few concrete variables in or from standardized situations." AR 62. Lastly, Mr. Deskins could only perform work that permitted "being off-task more than 15 percent of the workday" and must have "two-hour [work] increments follow[ed by] . . . a break of at least 10 minutes." AR 62. For the Non-Substance Use RFC, the ALJ determined that Mr. Deskins's RFC would stay primarily the same, except the off-task limitation would be eliminated. *See* AR 76.

Finally, at step five, the ALJ determined that when considering the Substance Use RFC, there "were no jobs that existed in significant numbers in the national economy that [Mr. Deskins] could have performed" and a finding of disabled was proper. AR 70–71. However, when considering the Non-Substance Use RFC, the ALJ determined that there were jobs that existed in "significant numbers in the national economy that [Mr. Deskins] c[ould] perform." AR 80. The vocational expert testified that an individual with Mr. Deskins's characteristics could perform the requirements of the representative occupations of (1) clerical assistant, (2) marker, and (3) laundry classifier. *See* AR 80, 122. Thus, the ALJ ruled that Mr. Deskins was not "disabled within the meaning of the . . . Act." AR 81.

On June 30, 2021, Mr. Deskins requested a review of the ALJ's decision. *See* AR 1. On February 22, 2022, the Appeals Council denied his request. *See* AR 1–4. On April 22, 2022, Mr. Deskins filed the complaint in this matter. *See* Compl., ECF No. 1. On October 21, 2022, the

parties consented to proceed before a magistrate judge for all purposes. *See* Order Referring Case to Magistrate Judge 1, ECF No. 15.

## II. LEGAL STANDARD

A district court sits in what is essentially an appellate role when it reviews the Commissioner's disability determination, which must be upheld "if it is supported by substantial evidence and is not tainted by an error of law." *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Butler*, 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This standard "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. Fed. Energy Regul. Comm'n*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (cleaned up).

"Substantial-evidence review is highly deferential to the agency fact-finder." *Rosello ex rel. Rosello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). "An ALJ's credibility determinations, in particular, 'are entitled to great deference.'" *Harrison Cnty. Coal Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 790 F. App'x 210, 212 (D.C. Cir. 2019) (quoting *Sec'y of Labor v. Keystone Coal Mining Corp.*, 151 F.3d 1096, 1107 (D.C. Cir. 1998)). "The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment 'concerning the credibility of the evidence with its own.'" *Goodman v. Colvin*, 233 F. Supp. 3d 88, 104 (D.D.C. 2017) (quoting *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995)). But the ALJ must have built a "logical bridge" between the evidence and her conclusions so that this Court may "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

On review, the "plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11-cv-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)). If the ALJ is found to have applied the correct legal standards and met the substantial evidence threshold, the reviewing court may grant the Commissioner's motion for an affirmance of the disability determination. *See, e.g.*, *Hicks v. Astrue*, 718 F. Supp. 2d 1, 17 (D.D.C. 2010). If a court finds that an ALJ erred in his determination that a claimant was not disabled, it may reverse and remand, requiring the SSA to conduct further proceedings consistent with the law. *See, e.g.*, *Jackson v. Barnhart*, 271 F. Supp. 2d. 30, 38 (D.D.C. 2002).

**III.   DISCUSSION**

Substantial evidence supports the ALJ's finding that Mr. Deskins is not disabled within the meaning of the Act. Additionally, the ALJ properly conducted the RFC analysis at step four and considered Mr. Deskins's limitations in concentration, persistence, and pace ("CPP").[2]

   A.   <u>The ALJ Properly Weighed Mr. Deskins's Drug and Alcohol Abuse</u>

"[I]f the Commissioner finds that the claimant is disabled but there is medical evidence that the claimant suffers from a substance use disorder, the Commissioner 'must determine if the substance use disorder is a contributing factor material to the determination of disability.'" *Carroll v. Saul*, No. 19-cv-391, 2020 WL 4754680, at *2 (D.D.C. Jan. 9, 2020) (quoting 42 U.S.C. § 1382c(a)(3)(J)). "The critical inquiry is whether the claimant would still be considered disabled absent substance use." *Carroll*, 2020 WL 4754680, at *2 (citing 20 C.F.R. § 416.935(b)(2)(i)).

---

[2] CPP is "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Johnson v. Saul*, 19-cv-3829, 2021 WL 411202, at *5 (D.D.C. Feb. 5, 2021) (cleaned up).

8

"[I]f the claimant's remaining limitations would not be disabling absent substance abuse, then substance use is a contributing factor material to the determination of disability and the claimant will not be considered disabled overall." *Carroll*, 2020 WL 4754680, at *2 (citing 20 C.F.R. § 416.935(b)(2)(i)). According to Social Security Ruling ("SSR") 13-2p—a policy interpretation for cases involving drug addiction and alcoholism ("DAA")[3]—the plaintiff "bears the burden of proof regarding whether [DAA] is a contributing factor material to the determination of disability." *Carroll*, 2020 WL 4754680, at *2 (citing SSR 13-2p, 2013 WL 621536, at *4 (S.S.A. Feb. 20, 2013)).

Mr. Deskins argues that the ALJ should have applied a stricter standard when evaluating DAA. *See* Mem. P. & A. Supp. Pl.'s Mot. J. Reversal ("Pl.'s Mem.") 18–19, ECF No. 19-1. Specifically, he contends that the ALJ should have considered whether his impairments and substance use were "inextricably linked[.]" *Id.* at 18. Plaintiff relies on non-binding SSA guidance from 1996 that stated "a finding of 'not material' would be appropriate" when impossible to separate limitations imposed by DAA and mental disorders. *Id.* (quoting SSA Emergency Teletype, "Questions and Answers Concerning DAA from July 2, 1996 Teleconference—Medical Adjudicators—ACTIONS," August 30, 1996). However, no court within this Circuit has relied on this 1996 SSA guidance. Moreover, SSR 13-2p superseded the 1996 policy. *See* SSR 13-2p, 2013 WL 621536, at *1 ("This SSR obsoletes [the 1996 guidance]."). Thus, this Court is unpersuaded that failure to consider whether Mr. Deskin's mental health impairments and substance use can be disentangled is a basis to remand.

---

[3] DAA-related circumstances are 1) DAA use for self-medication, 2) a link between DAA and mental impairments, and 3) alleged conflicting medical evidence regarding DAA.

"Here, pursuant to SSR 13-2p, the ALJ provided two RFCs: one which considered [DAA], and another which hypothesized no [DAA]." *Bowers v. Comm'r of Soc. Sec.*, No. 16-cv-6589, 2017 WL 4711470, at *9 (D.N.J. Oct. 20, 2017); *see* AR 62, 76. The two RFCs allowed the ALJ to determine whether "[DAA was] a contributing factor material to the individual's disability[.]" *Pyatt v. Kijakazi*, No. 17-cv-2809, 2022 WL 2452618, at *2 (D.D.C. July 6, 2022) (citing 42 U.S.C. § 423(d)(2)(C)); *see* AR 62–69, 76–79; *see also Nsiah v. Saul*, No. 19-cv-42, 2021 WL 372784, at *9–11 (D.D.C. Feb. 3, 2021) (ALJ used two separate RFCs to determine whether DAA was material). Through this assessment, the ALJ found that the only difference between the two RFCs stemmed from Mr. Deskins's substance use. *See* AR 62, 76. And without DAA, Mr. Deskins's "remaining limitations would not be disabling." *Pyatt*, 2022 WL 2452618, at *2 (citing 20 C.F.R § 416.935); *see* AR 71. For example, Dr. Drewno determined that Mr. Deskins had "no limitations or only mild limitations on his ability to perform basic mental work activities" without substance use. AR 79. Likewise, Dr. Nachbahr found that Mr. Deskins generally "had intact concentration and memory skills" and only exhibited "abnormal mental functioning [during] periods of recent substance abuse." AR 78.

Ultimately—taking "[d]iagnostic imaging, physical examinations, and mental status examinations" into consideration—the ALJ concluded that Mr. Deskins' "mental functioning" improved when he was not "abusing drugs and alcohol." AR 79. "Accordingly, the undersigned finds that the ALJ's juxtaposition of Plaintiff's symptoms when he was . . . sober with Plaintiff's symptoms when he was . . . []using substances was [proper]." *Carroll*, 2020 WL 4754680, at *13.

B. <u>The ALJ Conducted a Proper RFC Assessment Supported by Substantial Evidence</u>

The ALJ's assessment of Plaintiff's RFC "buil[t] an accurate and logical bridge from the evidence to his conclusion" and properly accounted for Mr. Deskins's daily activities and mild or

10

moderate limitations in CPP. *Laura A. v. Kijakazi*, No. 21-cv-451, 2022 WL 3644810, at *11 (D.D.C. Aug. 24, 2022) (cleaned up).

        1.    *The ALJ Built a Logical Bridge*

"In essence, an RFC assessment is a function-by-function assessment of a claimant's physical and mental work-related capabilities used to determine what an individual can still do despite his or her limitations." *Johnson v. Kijakazi*, No. 18-cv-2749, 2022 WL 2452610, at *2 (D.D.C July 6, 2022) (cleaned up). This assessment must include a logical bridge where the ALJ connected evidence within the record to his ultimate conclusions and "explain[ed] the effects of the symptoms on the individual's ability to work." *Mitchell v. Berryhill*, 241 F. Supp. 3d 161, 168 (D.D.C 2017) (cleaned up). The ALJ must provide a "narrative discussion describing how the evidence supports each conclusion about the claimant's capabilities, citing specific medical facts . . . and nonmedical evidence." *Johnson*, 2022 WL 2452610, at *2 (cleaned up). A reviewing court will deem the ALJ's conclusion sufficient if the ALJ "consider[ed] the [whole] record . . . and discuss[ed] which evidence he found credible and why." *Gregory v. Kijakazi*, No. 21-cv-2115, 2022 WL 7463984, at *5 (D.D.C. Oct. 12, 2022) (cleaned up). The narrative discussion does not need to be a perfect "articulation of each function and its implication on the ALJ's overall conclusion." *Gregory*, 2022 WL 7463984, at *5. However, a narrative discussion must do more than simply list evidence. *See Pinkney v. Astrue*, 675 F. Supp. 2d 9, 17 (D.D.C. 2009).

The ALJ's discussion was sufficiently detailed to enable this Court to "understand the ALJ's route to his conclusion to permit meaningful review." *Johnson*, 2022 WL 2452610, at *2 (cleaned up). The ALJ evaluated evidence such as Mr. Deskins's daily activities, his testimony, and medical findings, and discussed how this evidence translated into Plaintiff's workplace abilities. *See* AR 62–69, 76–79. For example, Mr. Deskins's mental status examinations showed

that his abnormal mental functioning coincided with periods of substance use. *See* AR 79–80. Based on this evidence, multiple physicians concluded that without substance use, Mr. Deskins had mild mental limitations and could perform simple, low-stress work activities at acceptable productivity levels. *See* AR at 79–80; *Carroll*, 2020 WL 4754680, at *4, *13 (holding that ALJ's finding that "absent DAA, Plaintiff would have the RFC to perform a full range of work at any exertion level . . . with [certain] . . . limitations . . . was sound"). Moreover, the ALJ explained that "diagnostic imaging, [and] physical examinations" were persuasive in showing that Mr. Deskins's impairments were not as severe as alleged. AR 79. And this medical evidence, combined with evidence of Mr. Deskins's daily activities, demonstrated that he could "lift and carry light objects[,] . . . use his upper extremities[,] . . . maintain functional levels of concentration[, and] . . . follow instructions." AR 80. Significantly, courts find the consideration and discussion of such evidence "sufficient . . . to . . . satisfy the narrative discussion requirement of the RFC assessment." *Pinkney*, 675 F. Supp. 2d at 16; *see Mitchell*, 241 F. Supp. 3d at 169.

Moreover, the ALJ properly discussed which evidence he found credible, persuasive, and consistent with the record. *See* AR 77–78. Specifically, the ALJ found Dr. Drewno's opinion—that Mr. Deskins had intact concentration and memory skills—persuasive and consistent with the record and other medical examinations. *See* AR 79. Additionally, the ALJ also found Dr. Nachbahr's opinion—that Mr. Deskins had intact mental functioning and abnormal mental functioning coincided with periods of substance use—particularly credible and consistent with the overall record. *See* AR 78. As for unpersuasive evidence, the ALJ noted that Mr. Deskins's "statements about the intensity, persistence, and limiting effects of his . . . symptoms [were] inconsistent because the evidence on record show[ed] that his impairments [were] not as severe as his allegations would suggest." AR 77. In support, the ALJ pointed to mental status examinations

completed during periods "coincid[ing] with periods of substantial substance use[,]" which indicated that his "mental functioning would improve significantly if he were to cease [DAA]." AR 77. In short, the ALJ adequately "discussed how the evidence in the record conflicted with Plaintiff's subjective complaints and explained why he weighed Plaintiff's subjective complaints as he did." *Nsiah v. Saul*, 19-cv-42, 2020 WL 12948519, at *14 (D.D.C. May 12, 2020).

2. *Daily Activities*

Agency regulations state that daily activities are a factor that ALJs may consider when evaluating the severity and credibility of a claimant's reported impairments. *See* 20 C.F.R. § 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *7. Hence, ALJs regularly consider daily activities when assessing plaintiffs' claims about limited work capacity. *See, e.g.*, *Colter v. Kijakazi*, No. 20-cv-632, 2022 WL 715218, at *13–14 (D.D.C. Mar. 10, 2022); *Grant v. Astrue*, 857 F. Supp. 2d 146, 156–57 (D.D.C. 2012).

Here, the ALJ determined that Mr. Deskins could complete chores, *see* AR 327, prepare simple meals, *see* AR 328, drive a vehicle, *see* AR 547, take public transportation, *see* AR 329, and occasionally care for his mother, *see* AR 327. Mr. Deskins also reported that he could follow written and verbal instructions. *See* AR 331. The ALJ noted that Mr. Deskins's daily activities required Mr. Deskins to walk, lift and carry light objects, and use his extremities. *See* AR 80. These daily activities rebutted Mr. Deskins's claim that he could not cook, clean, grocery shop, work, or use the bathroom without assistance. *See* AR 112–13; *see also Goodman*, 233 F. Supp. 3d at 101, 108 (daily chore activities such as grocery shopping, cooking, and cleaning the house proper to rebut claimant's alleged severity of back, hip, and knee pain symptoms); *Melanie A. S. v. Kijakazi*, No. 21-cv-185, 2022 WL 1721196, at *14–16 (D.D.C. May 12, 2022) (evidence of the ability to

drive, use of public transportation, cook, clean, complete laundry, engage in self-care, rebutted plaintiff's allegations that she could not work or independently complete activities of daily living).

Contrary to Mr. Deskins's assertion, *see* Pl.'s Mem. at 21, courts have upheld ALJ decisions that relied on household activities to draw conclusions about a person's abilities in the labor market, *see Goodman,* 233 F. Supp. 3d at 111; *Grant*, 857 F. Supp. 2d at 156. Here, daily activities demonstrated that Mr. Deskins could complete "light work"[4] tasks such as "operat[ing] hand and foot controls and . . . exert[ing] pressure . . . with his upper extremities," "stand[ing] and walk[ing] a fair amount, lift[ing] and carry[ing] light objects[, and] us[ing] . . . upper extremities for reaching and grasping." AR 62, 66. Moreover, the ALJ reasoned that evidence of Mr. Deskins's ability to drive and use public transportation demonstrated his ability to "maintain functional levels of concentration" and understand how to navigate, follow regulations, and use machines. AR 68. Again, these skills substantiated that Mr. Deskins could complete light work tasks. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 459 (M.D. Pa. 2016) (finding that substantial evidence supported ALJ's RFC that plaintiff could perform light work when plaintiff was "able to drive and take public transportation"). Thus, the ALJ properly determined that Mr. Deskins could perform light work. *See* AR 66; *Kim M. v. Kijakazi*, 20-cv-2072, at *9 (D.D.C. Sept. 3, 2021) ("[M]oderate limitations on physical functioning are consistent with the full range of light work, not sedentary work[.]").

   3.   *Mild or Moderate Limitations in CPP*

According to the SSA, "a 'moderate' limitation [in CPP] means that the claimant's 'functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.'" *Laura A.*, 2022 WL 3644810, at *11 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00f (2)(c)).

---

[4] "Light work involves . . . a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967.

"Although the SSA's regulations do not define the word 'fair,' that term, used in this context, is commonly understood to mean 'not very good or very bad: of average or acceptable quality.'" *Id.* (citation omitted).

Plaintiff contends that the restrictions in his RFC do not sufficiently address his CPP limitations without substance use. *See* Pl.'s Mem. at 12. However, "[t]his Court has maintained that ALJs can properly account for CPP limitations by limiting the type of work and tasks the claimant can perform—such as, for example, simple and routine tasks or work that requires a limited number of steps—if they 'explain how such an RFC is consistent with the claimant's trouble with [CPP].'" *Laura A.,* 2022 WL 3644810, at *11 (quoting *Nsiah*, 2021 WL 372784, at *15 n.4). This "does not require exhaustive explanation" by an ALJ. *Watson v. Kijakazi*, No. 20-cv-1363, 2022 WL 3576201, at *4 (D.D.C. Aug. 19, 2022); *see also Mitchell v. Kijakazi*, No. 19-cv-2560, 2021 WL 5310541, at *4–5 (D.D.C. Nov. 15, 2021) ("[A]n ALJ need not describe the specific formula and its variables that resulted in his conclusion[.]").

Here, the ALJ adequately explained how the RFC limitations were consistent with and addressed Mr. Deskins's moderate CPP limitations in a narrative discussion. The ALJ drew on record evidence which demonstrated that Mr. Deskins "could perform unskilled work in a [low stress] work with acceptable productivity levels because they would require him to be able to maintain functional levels of concentration, follow instructions, have an intact capacity for understanding, have a functional level of motivation, be able to get along with others, and be able to adjust to potentially stressful situations." AR 80. Mr. Deskins's ability to "maintain functional levels of concentration" was substantial evidence that further RFC restrictions were unnecessary. *Darlene M. v. Kijakazi*, No. 20-cv-1817, 2021 WL 6841641, at *27 (D.D.C. Sept. 3, 2021); *see* AR 80. Although "[t]he ALJ expressly considered evidence of mental impairment in the [RFC]

assessment[,] . . . [he] simply gave greater weight to other evidence which suggested [Plaintiff] was not mentally limited from performing simple, routine tasks." *Watson*, 2022 WL 3576201, at *4 (cleaned up); *see* AR 79–80.

"[T]he RFC finding here adequately accounts for Plaintiff's moderate CPP limitations." *Laura A.*, 2022 WL 3644810, at *12. Mr. Deskins's claims regarding the severity of his CPP limitations are inconsistent with the record evidence. *See* AR 77. As an initial matter, "the evidence does not suggest that Plaintiff encounters substantial concentration issues." *Laura A.*, 2022 WL 3644810, at *12; *see* AR 79. Dr. Nachbahr—who the ALJ found "persuasive"—concluded that Mr. Deskins "could carry out simple tasks and instructions in an environment that only required limited social interaction[,]" and that there were "no limitations or only . . . mild limitations on his ability to perform basic mental work activities[.]" AR 78. "Other courts have concluded that an ALJ's reliance on similar findings was appropriate in accounting for moderate CPP limitations." *Laura A.*, 2022 WL 3644810, at *12 (insubstantial concentration issues where plaintiff showed only "mildly impaired attention and concentration" and "no limitation with her ability to understand, remember, or apply simple directions and instructions") (citation omitted). The ALJ also noted that Mr. Deskins himself "reported that he is able to drive[,] . . . enjoys reading and watching television, . . . [and has the] ability to follow instructions[.]" AR 60. "This suggests that Plaintiff can . . . concentrate—that is, stay on task—for at least some period of time." *Laura A.*, 2022 WL 3644810, at *12. Therefore, "although a 'moderate' CPP limitation 'necessarily establishes *some* deficit in the claimant's ability to sustain focused attention and concentration,' as the ALJ found, the record does not reflect a significant deficit." *Id.* (quoting *Nsiah*, 2020 WL 12948519, at *14).

In addition, the ALJ adequately addressed how Mr. Deskins's moderate persistence and pace limitations would not impact his ability to sustain simple, routine, unskilled work. *See* AR 78–79. First, the ALJ relied on medical records demonstrating that Mr. Deskins could "sustain an ordinary routine without special supervision" and was only moderately limited in his ability to "complete a normal workday and workweek without interruptions[.]" AR 142; *see* AR 78. Second, the ALJ relied on opinion evidence from professionals, such as Dr. Nachbahr and Dr. Drewno, who concluded that Mr. Deskins "could carry out simple tasks and instructions in an environment that only required limited social interaction[,]" AR 78, and that there were "no limitations or only mild limitations on his ability to perform basic mental work activities[.]"AR 79. Taken together, the Court finds that "the ALJ considered a broad swath of evidence, including medical records, treatment records, and the opinions of medical experts" in evaluating Plaintiff's persistence and pace limitations. *Laura A.*, 2022 WL 3644810, at *17.

Finally, "the ALJ explained which sources were credible and which were not" when making RFC decisions about CPP. *Pinkney*, 675 F. Supp. 2d. at 17; *see* AR 66–68, 72–74, 77–79. On the one hand, the ALJ concluded that Dr. Drewno's opinion that Mr. Deskins had at most moderate CPP limitations "[was] supported by a direct examination of the claimant and . . . [wa]s largely consistent with the rest of the evidence . . . [which showed] that the claimant had intact concentration and memory skills[.]" AR 79. On the other hand, the ALJ determined that Mr. Deskins's "allegations [were] not entirely consistent with his activities of daily living[,]" thus finding this portion of his testimony to be less credible. AR 80. "As the finder of fact, the ALJ has great discretion in evaluating a claimant's testimony and is generally entitled to great deference." *Demetria R. v. Kijakazi*, 20-cv-3227, 2022 WL 3142376, at *10 (D.D.C. June 30, 2022) (giving controlling weight to ALJ's finding that the plaintiff's statements about CPP were inconsistent

with the record). Ultimately, the undersigned finds that "the ALJ did more than merely list the evidence" and accordingly provided an adequate explanation of Plaintiff's CPP limitations (or lack thereof). *Pinkney*, 675 F. Supp. 2d at 17–18; *see* AR 79–80.

## IV.  CONCLUSION

For the foregoing reasons, as set out in an accompanying order, the Court will DENY Plaintiff's Motion for Judgment of Reversal and GRANT Defendant's Motion for Judgment of Affirmance.

Date: May 30, 2023

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE